IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

SUGAR LAND ENT AND SLEEP CENTER,
as assignee of Colton Jackson,

     Plaintiff,

vs.

HIGHLANDS RESIDENTIAL MORTGAGE,
LTD GROUP HEALTH BENEFIT PLAN,
UMR, INC., and ZELIS HEALTHCARE, LLC,

     Defendants.

CIVIL ACTION NO.

Hon.

_____/

## COMPLAINT FOR
## DAMAGES AND DECLARATORY RELIEF

Plaintiff, SUGAR LAND ENT AND SLEEP CENTER ("SLENT"), as assignee of Colton Jackson ("Jackson"), by and through its attorneys, BLANCO WILCZYNSKI, PLLC, through ORLANDO L. BLANCO and DEREK S. WILCZYNSKI, brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001, *et seq.*, and Federal Common law and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action brought under the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. 1001, *et seq.*, specifically ERISA §502(d), 29 U.S.C. 1132(d), and other applicable statutes and federal law, regarding a breach of the terms of an employee benefit plan (hereinafter the "Plan") and a breach of fiduciary duty, and for the purpose of compelling Defendants to provide certain health care benefits coverage in the amounts and at the coverage levels provided for under the Plan, compelling the production of Plan documents and documents relied upon by Defendants to deny benefits which have been unlawfully withheld, for Declaratory Relief,

and for recovery of damages, costs, and attorney fees incurred as a consequence of Defendants' failure to render payment in accordance with the terms of the Plan and for Defendants' failure to pay benefits due under the Plan and to produce all relevant Plan documents as required by ERISA.

2. More specifically, this action arises from Defendants' misrepresentation that an ERISA-governed employee healthcare benefit plan had negotiated discounts with medical providers, and more specifically with SLENT, when no such negotiated discounts existed at the time Defendants' adjudicated claims and the unlawful reduction of benefits on the purported basis of a discount agreement that never existed.

3. At all times pertinent to this action, Defendants misrepresented to its Plan beneficiaries, including Jackson, that provider negotiated discounts existed, and applied the purported discounts to deny payment for services provided by Plaintiff to unlawfully enrich Defendants, when no negotiated agreement existed between Defendants and SLENT and Defendants knew that those representations were false.

4. Defendants issued Explanations of Benefits ("EOBs") to Plan participants and beneficiaries, including Jackson and SLENT, misrepresenting that covered charges billed by SLENT were reduced pursuant to "***provider negotiated discounts***," thereby lowering the allowed amounts and reducing benefits payable under the Plan, when no such discounts existed.

5. After issuing EOBs reflecting the purported discounts, Defendants attempted to negotiate reduced reimbursement with SLENT on a post-hoc basis, confirming that no negotiated discounts existed when benefits were determined under the Plan and denied.

6.      Through these actions, Defendants improperly denied benefits owed under the Plan, breached their fiduciary duties, and failed to provide Plan documents they were required to provide by law.

## **THE PARTIES**

7.      ***SLENT*** is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Sugar Land, Texas, which specializes in the diagnosis and treatment of allergies, sinusitis, sleep apnea and other sleep and ear, nose and throat (hereinafter "ENT") related medical issues. Dr. James J. Ludwick, MD, (hereinafter "Ludwick") is a Board Certified ENT, providing medical services to patients on behalf of SLENT and was at all times pertinent a beneficiary of The Plan.

8.      ***Highlands Residential Mortgage***, LTD (hereinafter "Highlands") maintained a benefits plan for the health benefit of eligible employees, operating under the name "Highlands Residential Mortgage, LTD Group Health Benefit Plan" (hereinafter "The Plan"). The Plan was at all times pertinent an "employee welfare benefit plan," as defined by ERISA, 29 U.S.C. §1002(1).

9.      ***UMR, Inc***. (hereinafter "UMR") is the third-party administrator for The Plan and does business in Texas. Together with The Plan, and on its behalf, UMR was at all times pertinent to this action delegated the responsibility for the administration of claims, the production of Plan documents and processing appeals under the applicable medical component of The Plan. At all times pertinent to this action, UMR was acting as the Plan administrator as defined by ERISA, 29 U.S.C. §1002(16)(A) and was a fiduciary, performing fiduciary functions with respect to The Plan within the meaning of ERISA §3(21)(A).

10.     ***Zelis Healthcare LLC***  (hereinafter "Zelis") is a healthcare payments repricing company that works on behalf of insurers and health care plans to reduce payments made to medical providers. Zelis does business in Texas and, at all times pertinent to this case, was responsible for administering payments for services provided by Plaintiff.  Zelis was acting as a fiduciary with respect to the Plan within the meaning of ERISA §3(21)(A).

11.     ***Colton Jackson*** (hereinafter "Jackson") was at all times pertinent an employee of Highlands and was eligible to participate in the Plan and receive benefits under the applicable Medical Plan as participant in the Plan, as defined by ERISA, 29 U.S.C. §1002(7). On or about March 6, 2025, Jackson received medical treatment at SLENT and executed a "Legal Assignment of Benefits and Designation of Authorized Representative."

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to ERISA §§502(e)(1)(f), 29 U.S.C. 1132(e)(1)(f), 28 U.S.C. § 1331 and 28 U.S.C §2201.

13.     Venue is proper in this District pursuant to ERISA §502(e)(2) and 29 U.S.C. §1132(e)(2) because the Plan is administered in this District, the breaches occurred here and Defendants transact business in this District, where a substantial part of the events giving rise to the lawsuit occurred, pursuant to 28 U.S.C. §1391(b)(2).

## GENERAL ALLEGATIONS/FACTUAL BACKGROUND

14.     Jackson initially received medical services at SLENT on March 6, 2025, at which time Jackson signed an Assignment of Benefits (**Exhibit A**).

15.     Jackson subsequently received physician services on March 8, 10, 11, and 18, 2025.  The charges for each date of service were respectively: 3/6/2025-$1,873.00,

3/8/2025-$900.00, 3/10/2025-$1,084.00, 3/11/2025-$2,100.00, and 3/18/2025-$160.00. The total charges for the five (5) dates of service were $6,117.00. SLENT submitted its claims for these medical services to The Plan which were directed to Zelis by The Plan. (**Exhibit B**.)

16.    UMR issued an Explanation of Benefits (hereinafter "EOB") for each date of service rendered by SLENT. The Plan paid zero dollars ($0.00) in total for all five claims and applied the following "provider discounts" totaling $2,908.31:

- 3/6/25 Charge-$1,873.00, Discount applied-$1,298.01, Amount paid-$0
- 3/8/25 Charge-$900.00, Discount applied-$776.84, Amount paid-$0
- 3/10/25 Charge-$1,084, Discount applied-$742.94, Amount paid-$0
- 3/11/25 Charge-$2,100, Discount applied-$0, Amount paid-$0
- 3/18/25 Charge-$160.00, Discount applied-$90.52, Amount paid-$0

    (**Exhibit C**.)

17.    For each date of service, save March 11, 2025, UMR applied fabricated discounts to the claims totaling $2,908.31, with the remaining amounts being applied to the patient's responsibility, and directed the patient to **_not_** pay the difference based on the misrepresentation that UMR had obtained a "***908 Provider negotiated discount***," also advising Jackson, "[***Y]ou are not responsible for the balance***." (**Exhibit C**, at pgs. 4 of 20, 8 of 20, 12 of 20, and 20 of 20.) No discount was applied for date of service of March 11, 2025, because UMR denied the entire claim on the erroneous premise that it was not filed as a "purchase" claim, when in fact it was. (**Exhibit C**, at pg. 16 of 20, for 3/11/25 EOB.)

18.    The EOBs issued by UMR also directed Plan participants and beneficiaries, like Jackson and SLENT, the medical provider, to call UMR with any questions about the

EOBs.  (**Exhibit C**, at last page of each EOB, stating: "[*I]f you have any questions about this explanation of benefits, please call the toll-free number on your ID Card.*")  However, upon receipt of such calls from Plan participants, beneficiaries and medical providers with questions about the EOB, UMR directed all such callers to Zelis, for "claim negotiations."

19.     On April 15, 2025 (by certified mail to UMR) and again on April 17, 2025 (by email to Jojo Rosson, the designated Plan Administrator at Highlands ("Rosson")), Ludwick requested the entire administrative record and plan documents as statutorily authorized under ERISA's full and fair review claims procedures in preparation of an appeal of each of the denied medical claims, pursuant to ERISA § 503, 29 U.S.C. § 1133. The letter to UMR and the email to Rosson requested the entire administrative record for each date of service, including, among other things, a copy of the Plan, the Summary Plan Description ("SPD"), the Administrative Services Agreements ("ASAs"), and any supporting Plan documents, as well as a copy of invoices from Zelis, to either UMR and/or Highlands, along with invoices from UMR to Highlands relating to the processing and payment of any claim for benefits, relied upon for the denial and/or *discounting* of benefits and/or applicable to any claim for benefits. (**Exhibit D**.)

20.     When neither SLENT nor Ludwick received a response from the Plan, UMR, or from Zelis, Ludwick sent a SECOND Request for Administrative Record via email to Rosson on August 19, 2025 (**Exhibit E**).

21.     In response to Ludwick's second request for the Administrative Record, on September 2, 2025, UMR directed a letter via email to Ludwick falsely claiming that "[T]here were no adverse benefit determinations in the adjudication of the above-referenced claims under the Plan," and cited only the Plan's Summary Plan Description

6

language for services received from a non-network provider, when it knew that payment for services had been denied based on fabricated discount agreements that did not exist, and not on the non-network provider basis. (**Exhibit F**.)

22.     Additionally, with its letter of September 2, 2025, UMR enclosed only an *unsigned* copy of the Highlands' Plan SPD, and submitted Health Insurance Claim Forms, including Zelis repricing information, for dates of service 03/06/2025- 03/18/2025, which were already in possession of the beneficiary. UMR refused to provide any other parts of the administrative record, as required by ERISA. (**Exhibit G**, Plan SPD (Unsigned) and **Exhibit B**, Claim Forms with Zelis Repricing information.)

23.     On September 11, 2025, Ludwick sent a "THIRD Request for Complete Administrative Records" to Jackie Hickman (hereinafter "Hickman"), Plan Administrator for Highlands, via email, indicating the documents produced by UMR fell profoundly short of satisfying the statutory requirements for requests made of the entire administrative record, citing to specific language in The Plan that mandates production of the ENTIRE Administrative Record, and compliance with its claims and appeals procedures, as well as the statutory bases for the production of records requested by Ludwick.   Once again and for the **THIRD** time, Ludwick requested the "ENTIRE administrative record, including ALL of the above documents, plus any and all communications, either verbal or written, electronic or on paper, to/from the Plan and its TPA UMR," and the Administrative Services Agreement ("ASA") and any other agreements between Highlands, Zelis, and UMR. (**Exhibit H**, September 11, 2025, letter to Hickman.)

24.     On September 15, 2025, four days after Highlands received Ludwick's THIRD Request for the Administrative Record, a representative from Zelis, Sederica

7

Everett (hereinafter "Everett"), solicited Ludwick to enter into a one-time contractual discount agreement for the March 6, 2025, date of service.  In its solicitation, Zelis proposed a "One-time Agreement" to pay $684.24 of the $1,873.00 billed in exchange for "*expedited processing*" of that claim.  Zelis' solicitation and offer of September 15, 2025, was sent more than 5 months ***after*** UMR issued its EOB for the same date of service, representing that it had already previously retained a "*provider negotiated discount*" with SLENT.  The agreement was rejected by Dr. Ludwick. (**Exhibit I**, Zelis solicitation correspondence and terms of offer.)

25.    On September 15, 2025, Dr. Ludwick directed a follow-up email to Hickman, confirming her receipt of his Third Request for the Administrative Record, and put her on notice of Zelis' solicitation and offer received on that same date, September 15, 2025  (**Exhibit J**, September 15, 2025, email to Hickman).

26.    On September 19, 2025, having received no response from Hickman to his email of September 15, 2025, Ludwick directed another email to Hickman advising that he had still not received the requested documentation and putting her on notice of potential legal action seeking judicial review. (**Exhibit K**, Sept. 19, 2025 email to Hickman.)

27.    On that same day, September 19, 2025, Hickman finally responded, directing an email to Ludwick stating, "we have provided you with the Summary Plan Description, which fulfills our obligation under ERISA regarding plan documentation. The administrative services agreement and carrier contracts you requested are not documents that plan participants or providers are entitled to receive." Hickman also advised Ludwick that she had referred the matter to the Plan's legal counsel. (**Exhibit L**, September 19, 2025, email from Hickman.)

28.   To date, neither Ludwick nor Jackson have received the requested documentation which they have every legal right to obtain, and which Defendants are statutorily obliged to provide.  Furthermore, to date, no payments have been made by the Plan for any of the services provided by SLENT to Jackson.

**COUNT I - ACTION UNDER ERISA §502(A)(1)(B),
29 U.S.C. 1132(A)(1)(B) AND FEDERAL COMMON
LAW TO RECOVER BENEFITS AGAINST ALL DEFENDANTS**

29.   Plaintiff re-alleges and incorporates all foregoing paragraphs.

30.   Pursuant to ERISA §502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B), Plaintiff seeks to recover benefits due under the terms of the Plan, to enforce rights under the terms of the Plan and to clarify rights to future benefits under the terms of the Plan.  Specifically, Plaintiff was wrongfully and improperly denied benefits by Defendants which are clearly reimbursable under the Plan, including benefits for past and future medical care provided under the Plan.

31.   ERISA requires every employee benefit plan to be established and maintained pursuant to a written instrument, 29 U.S.C. §1102(a)(1), specifying the basis on which payments are made to and from the Plan. 29 U.S.C. §1102(b)(4).  A plan administrator is obligated to act in accordance with the governing written plan under the provisions of 29 U.S.C. §1104(a)(1)(D).  Claims under an employee welfare benefit plan governed by ERISA are determined according to the terms of the Plan itself.  29 U.S.C. §1132(a)(1)(B). Summary documents providing communications with beneficiaries about the Plan do not constitute the terms of the Plan. *Cigna Corp. v. Amara,* 131 S. Ct. 1866 (2011).

32.    Plaintiff made a timely claim for benefits under Defendants' ERISA Plan and fulfilled all requirements under the Plan. Defendants wrongfully denied benefits due to Plaintiff under the terms of the Plan in one or more of the following ways:

a.    Wrongfully denying benefits which are clearly reimbursable under the terms of the Plan itself.

b.    Failing to timely provide Plaintiff with an accurate explanation of benefits and basis of denial of benefits under the Plan and continuing to mislead Plaintiff as to the true nature of the benefits reimbursable under the Plan.

c.    Failing to timely provide Plaintiff with a copy of all pertinent Plan documents when requested as required by 29 U.S.C. § 1022 and other controlling provisions of ERISA.

d.    Failing to provide for a full and fair review of the denial of Plaintiff's claim for benefits as required by 29 U.S.C. § 1133; 29 C.F.R. 2560.503-1(h)(2)(i)-(iv).

e.    Refusing to pay for medical services rendered which are authorized and reimbursable under the Plan.

f.    Intentionally misconstruing and misrepresenting provisions of both the Plan, as well as other internal documents relied upon for the denial of benefits in order to deny benefits that are clearly reimbursable under the terms of the Plan.

g.    Misrepresenting and applying "negotiated discounts" that Defendants knew did not exist for the purpose of denying benefits clearly reimbursable under the terms of the Plan.

h.    Other wrongful acts and/or omission that may be developed during discovery.

33.    Defendants' denial of Plaintiff's claims for benefit payments is in direct violation of the terms of the Plan.  Specifically, Plaintiff's claims were wrongfully denied, for all the reasons noted above.

34.    Therefore, pursuant to the terms of the Plan, and ERISA §502(a)(1)(B) and 29 U.S.C. §1132(a)(1)(B), Plaintiff hereby seeks recovery of the full benefits due for the

services rendered, together with costs and attorney fees wrongfully incurred in having to pursue this claim, despite reasonable attempts to resolve this matter prior to suit.

## COUNT II - ERISA ESTOPPEL
## BASED ON FEDERAL COMMON LAW

35.     Plaintiff re-alleges and incorporates all foregoing paragraphs.

36.     Pleading in the alternative, and without waiving any of the foregoing allegations, pursuant to equitable principles recognized under federal common law, more commonly referred to as "ERISA Estoppel," Defendants are estopped from denying Plaintiff's claim for benefits under the Plan in order to prevent Defendants from benefiting from their own misleading conduct, based upon a course of conduct and dealing between the Plan, its agents and representatives and Plaintiff, a medical provider, as more fully set forth in paragraphs 1-34, including but not limited to the following:

a.     After performing the procedures at issue, Plaintiff repeatedly attempted for months to obtain payment for its services, including a request for the administrative record. During this time, Defendants arbitrarily and capriciously denied Plaintiff's claim for benefits/payment pursuant to the Plan.

b.     In addition, the EOBs submitted by Defendants referenced having "[P]rovider negotiated discounts" which was untrue.

c.     Due to their course of conduct, as more fully described in the foregoing paragraphs of this Complaint, including misrepresentations about the terms of the Plan, Defendants have waived and are estopped from relying on documents not incorporated into the Plan, as a basis to deny the claim.

d.     Specifically, Defendants failed to provide a factual or legal basis for its denial of Plaintiff's claim.

37.     Extraordinary circumstances exist to support Plaintiff's claim for ERISA Estoppel based on Defendants' acts of intentional, misleading, reckless and otherwise malicious misrepresentation with respect to the benefits due under the terms of the Plan,

11

in the manner more fully described in the foregoing paragraphs, including but not limited to:

a. Wrongfully denying Plaintiff's claim for benefits under the Plan without a reasonable basis for such denial.

b. Misrepresenting the terms of the Plan and other documents for the specific purpose of misleading Plaintiff and others about benefits under the Plan.

c. Misrepresenting the terms of an internal document for the specific purpose of denying benefits otherwise covered and reimbursable under the terms of the Plan.

d. Failing and refusing to conduct a full and fair review of Plaintiff's claim for benefits and claiming to have conducted such reviews, when Defendants knew that this was not true, violating 29 C.F.R. 2560.503-1(h)(i)-(v) as well as other provisions of ERISA, including but not limited to 29 C.F.R. § 2560.503-1(h)(2)(iii) which expressly provides that all documents, records, and any other information relevant to claims for benefits, and any basis for denial of such claims, shall be provided to Plaintiff upon request.

e. Committing acts of bad faith, concealment and fraud by misrepresenting the terms of the Plan, relying and communicating to Plaintiff language from internal documents that Defendants knew did not constitute the terms of the Plan, and even misrepresenting the terms of internal documents for the specific purpose misleading Plaintiff into believing that services rendered were not covered by the Plan and/or that benefits were subject to certain "*Provider negotiated discounts*" that did not exist.

f. Preventing particularly vulnerable claimants and beneficiaries such as Plaintiff, Jackson, and other beneficiaries from seeking benefits for medical procedure reimbursable under the Plan by misleading them about the terms of the Plan and the coverage for certain vital services such as the procedure at issue.

g. Engaging in unconscionable and otherwise fraudulent conduct under both Federal Common law and State law, including but not limited to the Texas Deceptive Trade Practices Act, section 17.50 (a)(3) and other violations of the

Texas Insurance Code, as well as other state laws that may serve as grounds for equitable relief under ERISA.

h. Defendants actively engaged in acts to conceal significant facts including that the fact that they were not relying on the terms of the Plan itself for denial of benefits, despite representations to the contrary, that they were instead relying on internal documents that had never been legally incorporated into the Plan, as required by the term of the Plan itself and even misrepresented the complete pertinent terms of the internal documents that Defendants claimed to be relying on to deny benefits.

i. Other acts or omission that may serve to establish grounds for equitable relief that may be developed in discovery.

38. Pursuant to ERISA Estoppel, Plaintiff seeks to enjoin the above-described acts and practices which violate ERISA and the terms of the Plan and to obtain all other appropriate equitable relief to redress such violation and enforce the terms of the Plan, including, but not limited to, all the following:

a. Estopping Defendants from denying Plaintiff's benefits under the Plan.

b. Monetary compensation for losses resulting from Defendants' wrongful conduct and unjust enrichment included an equitable surcharge to the extent permitted by law.

c. To the extent necessary, reformation of the Plan to include for payment of reasonable and customary benefits as represented.

d. Any and all equitable remedies to remedy breaches of fiduciary duties by Defendants.

e. Production of all documents relied upon by Defendants in denying benefits under the Plan.

### COUNT III – RELIEF REQUESTED
### UNDER ERISA AND FEDERAL COMMON LAW

39. Plaintiff re-alleges and incorporates all foregoing paragraphs.

13

40.     As a direct result of Defendants' wrongful conduct, as more fully described above, Plaintiff has suffered the following damages:

a.     Non-payment of benefits reimbursable under the Plan.

b.     Damage to Plaintiff's credit and reputation.

c.     Delay and/or denial of reasonable and necessary medical care to patient.

d.     Loss of monetary interest for payments due and owing under the Plan.

e.     Mental anguish in the past and into the future.

f.     Consequential and incidental damages.

g.     Attorney fees as provided by 29 U.S.C. §1132 and by federal or state common law.

h.     Statutory penalties for failure to comply with ERISA's statutory requirements.

i.     Punitive damages to the extent permitted by federal common law for ERISA Estoppel claims.

j.     All other damages as allowed by law.

41.     Plaintiff seeks to recover past and existing benefits due under the terms of the ERISA plan.  Plaintiff requests that this court clarify Plaintiff's rights to future benefits under the terms of Defendants' ERISA Plan and seeks monetary damages for Defendants' breach of its obligation to pay Plan benefits, as well as other wrongful actions, together with all equitable relief provided under ERISA and federal common law, including, but not limited to, the equitable remedy of reinstatement of benefits due under the Plan, the payment of benefits owed to Plaintiff under the Plan, and all other equitable relief to make Plaintiff whole, as allowed by law.

14

42.     Plaintiff also pleads for extra contractual damages in connection with Plaintiff's ERISA Estoppel claims, including, but not limited to, consequential and incidental damages in the past, present, and future permitted under this ERISA Estoppel claim.

43.     Defendants acted intentionally, knowingly, recklessly, and with malice, in interfering with Plaintiff's right to benefits under the Plan.  Accordingly, Plaintiff seeks punitive damages in connection with its ERISA Estoppel claims against Defendants for their willful, intentional, and malicious conduct, to the extent such damages are allowed by law and/or to preserve the issue for potential appellate review.

44.     Plaintiff seeks pre-judgment interest on all monies retained by the Plan that rightfully belong to Plaintiff, which have allowed Defendants to profit from their wrongful acts that would amount to unjust enrichment.  Plaintiff seeks all other pre-judgment and post-judgment interest at the maximum rate allowed by law.

45.     Plaintiff requests that this court award reasonable attorney fees and costs, as provided for under ERISA and federal common law.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**
**BASED ON MISREPRESENTATION AND OMISSION**
**(ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

46.     Plaintiff re-alleges and incorporates all foregoing paragraphs.

47.     At all relevant times, Defendants Highlands Residential Mortgage, LTD Group Health Benefit Plan, UMR, Inc., and Zelis Healthcare, LLC exercised discretionary authority and control over the administration of the Plan, interpretation of Plan terms, determination of benefits, and calculation of allowed amounts, rendering them fiduciaries

15

within the meaning of ERISA §§ 3(21)(A) and 404(a), 29 U.S.C. §§ 1002(21)(A), and 1104(a).

48.     Defendants breached their fiduciary duties of loyalty and prudence by knowingly making materially false and misleading representations, and by omitting material facts, concerning the existence of provider negotiated discounts, contractual reimbursement arrangements, and the methodology used to calculate the "allowed amount" reflected on Explanations of Benefits.

49.     Specifically, Defendants represented to Plan participants and Plaintiff that billed charges were reduced pursuant to valid "Provider negotiated discounts," when in fact no such agreement existed between Plaintiff and any Defendant or repricing entity at the time the claims were adjudicated.

50.     Defendants knew, or were reckless in not knowing, that these representations were false, as evidenced by their subsequent post-hoc attempts to negotiate reimbursement discounts after issuing EOBs reflecting fabricated discounts.

51.     These misrepresentations and omissions were material and were reasonably relied upon by Plaintiff in rendering medical services, accepting assignment of benefits, refraining from balance billing the patient, and pursuing Plan-governed reimbursement rather than alternative collection remedies.

52.     As a direct and proximate result of Defendants' fiduciary breaches, Plaintiff suffered losses including unpaid benefits, delay in payment, administrative costs, loss of use of funds, and other equitable harm.

53.     Plaintiff seeks appropriate equitable relief under ERISA § 502(a)(3), including but not limited to surcharge, disgorgement of ill-gotten gains, reformation of Plan practices, injunctive relief mandating the production of all relevant Plan documents

16

and any other documents relied upon by Defendants in making determinations of benefits under Plan, prohibiting the use of fabricated repricing schemes, and any other relief necessary to redress Defendants' violations and enforce ERISA.

## COUNT V
## FEDERAL COMMON LAW FRAUD AND MISREPRESENTATION
### (ERISA Federal Common Law – Pled in the Alternative)

54.    Plaintiff re-alleges and incorporates all foregoing paragraphs.

55.    Defendants knowingly made false representations of material fact to Plaintiff and Plan participants, including but not limited to representations that valid provider negotiated discounts existed and that the reduced allowed amounts reflected on EOBs were contractually authorized.

56.    Defendants made these representations with knowledge of their falsity, or with reckless disregard for the truth, and with the intent to induce Plaintiff's reliance.

57.    Plaintiff justifiably relied on these representations in rendering medical services, accepting assignment of benefits, foregoing balance billing, and submitting claims for payment under the Plan.

58.    Plaintiff suffered damages as a direct and proximate result of Defendants' fraudulent conduct, including unpaid benefits, delay damages, consequential losses, and administrative expenses.

59.    Plaintiff seeks all relief available under ERISA federal common law, including compensatory and equitable relief.

## COUNT VI – DECLARATORY RELIEF
### (28 U.S.C. § 2201)

60.    Plaintiff re-alleges and incorporates all foregoing paragraphs.

61. An actual and justiciable controversy exists between the parties concerning Defendants' authority to apply purported negotiated discounts and repricing reductions to Plaintiff's claims.

62. Plaintiff seeks a declaration that:

A. No valid provider agreement or negotiated discount existed between Plaintiff and any Defendant at the time claims were adjudicated;

B. Defendants lacked contractual and statutory authority to reduce Plaintiff's billed charges based on fabricated discounts;

C. Defendants' repricing practices violate ERISA and federal law;

D. Plaintiff is entitled to full reimbursement of benefits in accordance with the Plan absent unlawful repricing; and

E. Defendants shall produce the ENTIRE administrative record for the adjudication of benefits for all dates of service, including any and all communications, electronic or on paper to or from the Plan ant its agents UMR and Zelis, including any Administrative Services Agreement ("ASA") and any other agreements between Highlands, UMR, and Zelis, as well as any invoices for payment of services rendered by any of the Defendants in connection with the adjudication of Plaintiff's claims for benefits under the Plan.

## COUNT VII
## UNJUST ENRICHMENT / QUANTUM MERUIT
## (Pled in the Alternative)

63. Plaintiff re-alleges and incorporates all foregoing paragraphs.

64. Plaintiff conferred a substantial benefit upon Defendants by providing medically necessary services to a Plan participant for which Defendants were financially responsible.

65. Defendants knowingly accepted and retained the benefit of Plaintiff's services while failing to provide lawful compensation.

66. It would be inequitable for Defendants to retain the benefit of Plaintiff's services without paying the reasonable value thereof.

67.    Plaintiff seeks restitution and disgorgement in an amount equal to the reasonable value of the services rendered.

**COUNT VIII**
**PROHIBITED TRANSACTIONS**
**(ERISA § 406, 29 U.S.C. § 1106; ERISA § 502(a)(3))**

68.    Plaintiff re-alleges and incorporates all foregoing paragraphs

69.    At all relevant times, Defendants UMR, Inc., and Zelis Healthcare, LLC, were service providers to the Plan within the meaning of ERISA and exercised discretionary authority and control over claims administration, pricing, and benefit determinations.

70.    Upon information and belief, Zelis was compensated, directly or indirectly, on a percentage-of-savings, contingency-based, or otherwise incentive-driven basis tied to the amount by which Plaintiff's billed charges were reduced or denied.

71.    Such compensation structure created a direct financial interest adverse to the Plan and its participants and beneficiaries, and incentivized Defendants to reduce or deny benefits irrespective of Plan terms.

72.    By causing the Plan to enter into, maintain, and operate under such arrangements, Defendants caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a)(1)(C) and (D), 29 U.S.C. § 1106(a)(1)(C)–(D), including the furnishing of services for excessive compensation and the transfer of Plan assets for the benefit of a party in interest.

73.    Defendants further violated ERISA § 406(b)(1)–(3), 29 U.S.C. § 1106(b)(1)–(3), by dealing with Plan assets for their own interests, acting on behalf of parties with interests adverse to the Plan, and receiving consideration in connection with transactions involving Plan assets.

74. No statutory or regulatory exemption applies to excuse Defendants' prohibited conduct.

75. As a direct and proximate result of Defendants' prohibited transactions, Plaintiff and the Plan suffered losses including unpaid benefits, diversion of Plan assets, and increased administrative expenses.

76. Plaintiff seeks appropriate equitable relief under ERISA § 502(a)(3), including rescission of prohibited arrangements, restitution, disgorgement of compensation received by Zelis and UMR, surcharge, injunctive relief barring incentive-based repricing arrangements, and all other relief necessary to redress Defendants' violations.

**COUNT IX**
**DEFENDANTS' FAILURE TO PRODUCE PLAN DOCUMENTS**

77. Plaintiff re-alleges and incorporates all foregoing paragraphs.

78. Plaintiff requested, in writing and pursuant to ERISA §§ 104(b) and 502(c), 29 U.S.C. §§ 1024(b) and 1132(c), the production of Plan documents and records relevant to the adjudication of the claims at issue, including but not limited to the governing Plan document, Summary Plan Description, administrative services agreements, repricing or network agreements, fee schedules, compensation arrangements with Zelis Healthcare, LLC, and the complete administrative record.

79. Defendants received Plaintiff's requests and failed and/or refused to timely produce the requested documents within the statutory time period prescribed by ERISA.

80. Defendants' failure to produce was not inadvertent or the result of administrative oversight, but was knowing and willful, and formed part of Defendants' broader effort to conceal the absence of any valid provider agreement, the existence of

incentive-based repricing arrangements, and the methodology used to reduce Plaintiff's claims.

81.     As a direct and proximate result of Defendants' failure and refusal to produce Plan documents, Plaintiff has been prejudiced in its ability to evaluate its claims, exhaust administrative remedies, and enforce its rights under the Plan and ERISA.

82.     Defendants' conduct subjects them to statutory penalties under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), and supports the imposition of injunctive and equitable relief, including an Order compelling the production of all Plan documents requested by Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court order that discovery be immediately engaged in and enter judgment in its favor and against Defendants and grant the following relief:

A.     A declaration pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and 28 U.S.C. § 2201 that Defendants violated the terms of the Plan and ERISA by denying or reducing benefits through fabricated negotiated discounts and incentive-driven repricing arrangements;

B.     An order pursuant to ERISA § 502(a)(1)(B) compelling Defendants to pay Plaintiff all past-due benefits owed under the Plan, together with pre-judgment and post-judgment interest;

C.     An order pursuant to ERISA §§ 502(a)(1)(A), 502(a)(3), and 502(c), 29 U.S.C. §§ 1132(a)(1)(A), 1132(a)(3), and 1132(c), compelling Defendants to immediately produce all Plan documents, instruments, contracts, and

records requested by Plaintiff and required to be disclosed under ERISA, including but not limited to:

- the governing Plan document and all amendments,

- the Summary Plan Description,

- administrative services agreements,

- repricing, network, or access agreements,

- fee schedules and methodologies,

- compensation and incentive arrangements with Zelis Healthcare, LLC,

- Any and all invoices, account entries and other transaction records for any payments made and/or received by Defendants in connection with the claim for services submitted by SLENT for payment of its services,

- and the complete administrative record for the claims at issue;

D.     Appropriate equitable relief pursuant to ERISA § 502(a)(3), including but not limited to surcharge, restitution, disgorgement of profits and compensation received by Defendants, reformation of Plan practices, and injunctive relief prohibiting the use of fabricated or incentive-based repricing schemes;

E.     An order rescinding and declaring void any agreements or arrangements that constitute prohibited transactions under ERISA § 406, 29 U.S.C. § 1106, and permanently enjoining Defendants from entering into or operating under such arrangements;

22

F.      Treble damages, costs, and attorneys' fees pursuant to 18 U.S.C. § 1964(c) for Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act;

G.      Restitution and disgorgement under principles of unjust enrichment and quantum meruit for the reasonable value of services rendered;

H.      Statutory penalties pursuant to ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), for Defendants' knowing and willful failure to timely produce requested Plan documents;

I.      Reasonable attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), RICO, and other applicable law; and

J.      Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**BLANCO WILCZYNSKI, PLLC**

/s/ *Orlando L. Blanco*
Orlando L. Blanco
MI Bar No. 34480, SDTX No. 2403162
olb@blancopc.com
Derek S. Wilczynski
MI Bar No.P57079, SDTX No. 3072865
dsw@blancopc.com
1607 E Big Beaver Rd, Ste. 201
Troy, MI 48083
Tel. (248) 519-9000/Fax (248) 519-9001

Dated:  March 25, 2026
S:\Cases - Opened\Jackson, Colton - ERISA\Pleadings\Complaint\032526 Highlands-Jackson Complaint FINAL.docx